UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ERIC J. BROWN                                               CIVIL ACTION

VERSUS                                                      NUMBER: 11-1890

BURL CAIN, WARDEN                                           SECTION: "F"(6)

## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing. For the following reasons, it is hereby recommended that the instant petition be **DISMISSED WITH PREJUDICE**.

## PROCEDURAL HISTORY[1]

Petitioner, Eric J. Brown, is a state prisoner who is presently incarcerated at the

---

[1] A portion of the procedural history was obtained from the Louisiana Fifth Circuit's opinion, *State v. Brown*, 694 So.2d 435 (La. App. 5 Cir. 1997).

Louisiana State Penitentiary, Angola, Louisiana. Petitioner was indicted by a grand jury in Jefferson Parish for first degree murder, LSA-R.S. 14:30, and armed robbery, LSA-R.S. 14:64. The first degree murder charge was later reduced by the State to second degree murder, LSA-R.S. 14:30.1. Following a four-day jury trial in the Twenty-Fourth Judicial District Court for the Parish of Jefferson that started on April 30, 1996, petitioner was convicted as charged on both counts. Petitioner was sentenced to life imprisonment in connection with his second degree murder conviction and to 30 years imprisonment in connection with his armed robbery conviction, with the sentences to run concurrently. On April 9, 1997, the Louisiana Fifth Circuit Court of Appeal affirmed petitioner's convictions and sentences. *State v. Brown*, 694 So.2d 435 (La. App. 5 Cir. 1997). On October 31, 1997, the Louisiana Supreme Court denied petitioner's writ application, *State v. Brown*, 703 So.2d 19 (La. 1997), thereby rendering petitioner's convictions and sentences final. Petitioner's time for seeking review expired 90 days later, on January 29, 1998, when his time for filing a petition for a writ of certiorari with the United States Supreme Court expired. *See* Sup.Ct.R. 13(1); *see also Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999), *cert. denied*, 529 U.S. 1099, 120 S.Ct. 1834, 146 L.Ed.2d 777 (2000); *Habteselassie v. Novak*, 209 F.3d 1208, 1209 (10th Cir. 2000); *Harris v. Hutchinson*, 209 F.3d 325, 328 n.1 (4th Cir. 2000).

On May 13, 1999, counsel filed on petitioner's behalf an application for post-

conviction relief.[2] On September 7, 1999, the state district court denied petitioner post-conviction relief.[3] Petitioner did not seek relief from the state appellate court or state supreme court in connection with the district court's adverse decision.

On November 15, 2000, counsel filed on petitioner's behalf another application for post-conviction relief with the state district court.[4] On November 29, 2000, the state district court denied petitioner's post-conviction application as untimely.[5] Petitioner filed a writ application with the Louisiana Fifth Circuit Court of Appeal which the state appellate court, on September 26, 2001, declined to consider since it was filed beyond the 30 day time limit provided under Uniform Rules-Court of Appeal, Rule 4-3. *State v. Brown*, No. 2001-KH–0984 (La. App. 5 Cir. 2001) (unpublished opinion).[6] Petitioner did not seek relief from the Louisiana Supreme Court.

On May 6, 2009, petitioner filed with the state district court a *pro se* application for

---

[2]A copy of petitioner's May 13, 1999 post-conviction application is contained in the State rec., vol. 1 of 5. May 13, 1999 represents the date the application was file stamped by the state district court. Because the post-conviction application was filed by counsel, the mailbox rule, discussed *infra*, is not applicable.

[3]A copy of the state district court's September 7, 1999 Order denying petitioner post-conviction relief is contained in the State rec., vol. 1 of 5.

[4]A copy of petitioner's November 15, 2000 post-conviction application is contained in the State rec., vol. 2 of 5.

[5]A copy of the district court's November 29, 2000 Order is contained in the State rec., vol. 2 of 5.

[6]A copy of the state appellate court's September 26, 2001 unpublished opinion is contained in the State rec., vol. 2 of 5.

post-conviction relief, asserting that he recently obtained new evidence in the form of two affidavits in which the affiants, Brandon Robertson and Amin Amin, implicate someone else for the murder and armed robbery which petitioner was convicted of committing.[7] On July 1, 2009, the state district court denied relief finding, in pertinent part, that petitioner's application was untimely.[8]

On November 6, 2009, the Louisiana Fifth Circuit, pursuant to petitioner's writ application, determined that the district court erred in finding petitioner's post-conviction application untimely. The state appellate court's decision in this regard was based on petitioner's alleged discovery in December, 2008, of new facts upon which his post-conviction application was based. Because petitioner filed his post-conviction application on May 6, 2009, less than three years after his December, 2008 discovery of new facts,[9] the

---

[7] A copy of petitioner's writ application is contained in the State rec., vol. 2 of 5. May 6, 2009 represents the date petitioner signed his application. In *Causey v. Cain*, 450 F.3d 601, 604-605 (5th Cir. 2006), the United States Fifth Circuit determined that the federal "mailbox rule" should be employed when determining the filing date of *pro se* state court pleadings for purposes of determining the timeliness of a federal habeas petition. Under the "mailbox rule," the date a *pro se* prisoner's pleading is provided to prison officials for mailing is the date it is considered filed. *See Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). Generally, a court will look to the date a prisoner signed his pleading as the earliest date the pleading could have been provided to prison officials for mailing. *See Colarte v. Leblanc*, 40 F.Supp.2d 816, 817 (E.D. La. 1999).

[8] A copy of the district court's July 1, 2009 Order is contained in the State rec., vol. 2 of 5.

[9] At the time of petitioner's conviction, La.C.Cr.P. art. 930.8 provided that applicants had three years from their convictions within which to seek post-conviction relief. Effective August 15, 1999, La.C.Cr.P. art. 930.8 was amended, shortening the time limit for seeking post-

...

court concluded that petitioner's post-conviction application was, in fact, timely. *State v. Brown*, No. 2009-KH-0663, pp. 2-3 (La. App. 5 Cir. Nov. 6, 2009) (unpublished opinion).[10] Accordingly, the state appellate court concluded that petitioner's "two theories of relief: (1) newly discovered evidence proves he was innocent of the crimes for which he was convicted and (2) newly discovered evidence proves that the state illegally withheld exculpatory evidence in violation of *Brady v. Maryland*, ..." should be addressed on the merits. *Id*. at pp. 1 and 3. Thereafter, the Louisiana Fifth Circuit proceeded to deny petitioner's actual innocence claim on the merits, *Id.* at pp. 5-7, but remanded petitioner's *Brady* claim to the district court for an adjudication on the merits. *Id*. at pp. 7-8.

Pursuant to the Louisiana Fifth Circuit's remand, the district court, on February 22, 2010, issued an Order denying petitioner's *Brady* claim on the merits. The court determined that petitioner had failed to meet his burden of proof, reasoning: "[T]he affidavits submitted by the petitioner ... lack specificity and particularity, and are based upon hearsay. Also, the petitioner fails to prove that the state had knowledge of any exculpatory information, and that any information would have changed the outcome of the trial."[11]

---

conviction relief from three to two years. *See State v. Mickel*, 864 So.2d 661, 663 (La. App. 5 Cir. 2003), *citing* 1999 La. Acts 1262.

[10] A copy of the state appellate court's November 6, 2009 unpublished opinion is contained in the State rec., vol. 2 of 5.

[11] A copy of the district court's February 22, 2010 Order is contained in the State rec., vol. 2 of 5.

On May 13, 2010, pursuant to petitioner's writ application, the Louisiana Fifth Circuit addressed the merits of petitioner's *Brady* claim. The state appellate court, after reviewing the affidavits from Brandon Robertson and Amin Amin, the applicable law as set forth in *Brady* and its progeny, and the evidence presented at trial, determined that petitioner's *Brady* claim was without merit, finding "no error in the trial court's denial of [petitioner's] application for post-conviction relief." *Brown v. Cain*, No. 2010-KH-0275 (La. App. 5 Cir. May 13, 2010) (unpublished opinion).[12] The Louisiana Supreme Court, on June 17, 2011, denied petitioner's writ application without opinion. *State ex rel. Brown v. State*, 63 So.3d 1027 (La. 2011).

Petitioner filed the instant habeas corpus application with this court on July 27, 2011.[13] In his habeas application, petitioner raises the following claims: 1) He was denied his right to impeach the State's witness at trial due to the State's concealment of witnesses Brandon Robertson and Amin Amin whose testimony would have contradicted the testimony of the State's witness; 2) the State withheld information provided to an investigating detective at the scene of the crime regarding the identity of "the real killer"; 3) it was fundamentally unfair that petitioner was unable to present at trial the testimony of Brandon Robertson and

---

[12] A copy of the state appellate court's unpublished May 13, 2010 opinion is contained in the State rec., vol. 2 of 5.

[13] Pursuant to the federal "mailbox rule", July 27, 2011, represents the date petitioner signed his habeas application. *See* discussion *supra* at n. 7.

Amin Amin "due to the [S]tate withholding this material information" given the fact that the State never proved its case beyond a reasonable doubt as the State presented no murder weapon and no eyewitness to the murder; and, 4) petitioner is entitled to an evidentiary hearing as "witnesses need to be brought forth on the witness stand, under oath and examined."

The State concedes that petitioner has exhausted his state court remedies as required under *Rose v. Lundy*, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982). (Rec. doc. 5, p. 3). However, the State contends that the instant matter is untimely. *Id*. Based upon the discussion set forth below, the court disagrees.

## **TIMELINESS**

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a petitioner is required to bring his habeas corpus claims pursuant to 28 U.S.C. § 2254 within one year from "the latest of -"

> **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> **(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> **(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> **(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1) (West 2011).

As set forth above, petitioner's conviction became final on October 31, 1997, and his time for seeking review expired 90 days later, on January 29, 1998, when his time for filing a petition for a writ of certiorari with the United States Supreme Court expired. Under the provisions of 28 U.S.C. § 2254(d)(1)(A), petitioner had a year from January 29, 1998, or until January 29, 1999, to timely seek federal habeas corpus relief. While the one-year statute of limitations is tolled during the period a petitioner has a "properly filed application for State post-conviction or other collateral review ... pending," *see* 28 U.S.C. § 2244(d)(2), petitioner had no such pleading pending during the pertinent time period. Thus, the State argues that petitioner's July 27, 2011 habeas petition, filed long after his January 29, 1999 deadline, is untimely.

The above argument is correct if one employs the provisions of 28 U.S.C. §2244(d)(1)(A) for the purpose of determining the applicable prescriptive period. However, § 2244(d)(1) specifies that one should employ, for purposes of calculating a petitioner's one-year statute of limitations, whichever date specified under subsections (A), (B), (C), and (D) affords him the longest applicable prescriptive period. Stated differently, whichever provision provides for the latest date on which prescription commences to run, that is the provision which should be employed when calculating the timeliness of a petitioner's federal

habeas application.

Under the provisions of 28 U.S.C. § 2244(d)(1)(D), petitioner had a year from December, 2008, when he alleges to have discovered the factual predicate of his claims, within which to seek habeas relief. While petitioner did not file the instant action until over two years later, in July, 2011, his one-year limitation period was tolled, pursuant to §2244(d)(2), on May 6, 2009, when he filed his *pro se* state post-conviction application. At that point, approximately four months of petitioner's one-year statute of limitations had expired. His post-conviction proceeding remained pending and, therefore, continued to toll prescription, until June 17, 2011, when the Louisiana Supreme Court denied his writ application. Petitioner filed this habeas corpus petition approximately one month later, on July 27, 2011, after only five months of his prescriptive period had expired. Accordingly, the court finds that the instant matter is timely. As such, the court shall proceed to address the merits of petitioner's claims following its review of the pertinent facts and applicable standard of review.

**FACTS**[14]

The crimes Brown was convicted of occurred on August 25, 1994 in Kenner, Louisiana. On that day, a woman named Valencia Peabody left her apartment for work leaving her boyfriend, Carmelo Salminen, asleep in the master bedroom and Brown, a friend

---

[14]The facts are taken from the Louisiana Fifth Circuit's opinion, *State v. Brown*, 694 So.2d 435, 436 (La. App. 5 Cir. 1997).

of Salminen, asleep on a downstairs sofa. Brown had spent the night in the apartment.

When Peabody returned to the apartment during her lunch break, she noticed that Salminen's vehicle was gone. She went inside and found that Salminen had been shot and was dead.

Responding to Peabody's complaint, police officers arrived on the scene within minutes. They found the upstairs area of the apartment ransacked and they learned that various items were missing, including three guns, a briefcase, a safe and a tote bag. There were no signs of forced entry.

A neighbor, Ruth McKinnies, testified at trial that at approximately 9:00 a.m. she had observed Brown exit the apartment and drive Salminen's vehicle up to the front door. Brown then began loading the vehicle with items taken from the apartment.

Later that day, the police received a report that the briefcase had been located in a dumpster behind a Taco Bell shop at 3117 Loyola Avenue in Kenner. When the officers arrived there to retrieve the briefcase, they observed Salminen's vehicle nearby in the parking lot across from the apartment of Brown's sister.

Subsequently, a warrant for Brown's arrest was issued along with a search warrant for the apartment of his sister. While searching the apartment, officers found Brown hiding in a closet.

An autopsy revealed that Salminen was fatally shot in the back of the head at a

distance ranging from two to five inches and that the time of death was between 8:49 and 10:49 a.m.

## **STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is

> objectively unreasonable, and we stressed in *Williams[ v. Taylor*, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also Hill*, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

## ANALYSIS

### Claims 1), 2) and 3): Suppression of Exculpatory Evidence

Petitioner argues: 1) He was denied his right to impeach the State's witness due to the State's concealment of witnesses Brandon Robertson and Amin Amin whose testimony would have contradicted the testimony of the State witness; 2) the State unlawfully withheld evidence provided to a detective regarding the identity of "the real killer"; and, 3) it was fundamentally unfair that he was unable to present at trial the testimony of Brandon Robertson and Amin Amin "due to the [S]tate withholding this material information".

Since the passage of the AEDPA, a federal habeas court may grant a writ of habeas corpus on a mixed question of law and fact, such as whether or not evidence was unconstitutionally suppressed, *see Trevino v. Johnson*, 168 F.3d 173, 184 (5th Cir.), *cert.*

*denied*, 527 U.S. 1056, 120 S.Ct. 22, 144 L.Ed.2d 825 (1999), only if it determines that the state court decision rested on an "unreasonable application" of clearly established Federal law, as determined by the Supreme Court, to the facts of the case. 28 U.S.C. § 2254 (d)(1).

In addressing petitioner's suppression of the evidence claim, the Louisiana Fifth Circuit first reviewed the evidence which petitioner contends the State suppressed.

> In support of his claim, [petitioner] submits two affidavits. Affiant Amin Amin states that he was asked by a guy named "Will" if he wanted to participate in the robbery of the victim for whose murder [petitioner] was convicted. Amin states that after initially agreeing to participate, he later changed his mind and told Will "I'm not messing with it." According to Amin, Will stated he was going to "jack" and kill the victim. The affidavit makes reference to a small black car being driven by Will on the day after the murder. The affidavit states that Will removed the stereo from the car then Will said he would "ditch" the car. The affidavit further states that Will returned and opened a safe that contained cocaine. Will then bragged that he was "able to do things himself."
>
> In the other affidavit, affiant Brandon Robertson states that on the day after the murder he told a detective that Will Griffin told him he was going to rob and kill the victim on the night before the murder. The affidavit states that the detective took Robertson's name and address and told him he would have to contact his mother because Robertson was a juvenile. Robertson states that he never heard from the detective again. According to Robertson, Amin was present when Griffin stated he was going to rob and kill the victim. Robertson further states that after the murder, Griffin was in possession of cocaine and a car stereo. Robertson states that after Griffin was released from prison, he told Robertson that he killed the victim.

*Brown v. Cain*, No. 2010-KH-0275, pp. 1-2 (La. App. 5 Cir. May 13, 2010).[15]

---

[15] A copy of the affidavits, which the Louisiana Fifth Circuit accurately summarized in its opinion, are attached to petitioner's habeas application (rec. doc. 1) as exhibit A.

Next, the Louisiana Fifth Circuit set forth the applicable law.

> In *Brady*, the United States Supreme Court held "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, [10 L.Ed.2d 215] (1963). The three components of a true Brady violation are that the evidence at issue must be favorable to the accused because it is exculpatory or impeaching, the evidence must have been suppressed by the State whether willfully or inadvertently, and prejudice must have ensued. *State v. Lande*, 06-24, p. 23 (La. App. 5 Cir. 6/28/06), 934 So.2d 280, 296, *writ denied*, 06-1894 (La. 4/20/07), 954 So.2d 154. "Favorable evidence includes both exculpatory evidence and evidence that impeaches the testimony of a witness whose credibility or reliability may determine guilt or innocence." *State v. Lande*, 06-24 at 22, 934 So.2d at 295. However, the evidence is only material if there is a reasonable probability that the results of the proceeding would have been different if the evidence had been disclosed to the defense. *State v. Lande*, 06-24 at 23, 934 So.2d at 296. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the trial. *Id.*

*Brown*, No. 2010-KH-0275 at pp. 2-3.

Thereafter, the state appellate court reviewed the trial evidence supporting petitioner's convictions.

> [O]n the morning of the murder, the victim's girlfriend, Valencia Peabody, left the apartment with the victim and [petitioner] asleep inside. When she returned to the apartment, she noticed that the victim's vehicle was gone and found the victim dead inside of the apartment. Officers responding to Peabody's call found the upstairs of the apartment ransacked and that missing items included three guns, a briefcase, a safe and a tote bag. Officers found no sign of forced entry.
> 
> A neighbor, Ruth McKinnies, testified that at approximately 9 a.m. on the date of the murder, she observed [petitioner] exit the apartment, drive the victim's vehicle up to the front door and load items taken from the apartment

>into the vehicle. An autopsy revealed that the victim was shot in the back of the head at close range and estimated the time of death to be between 8:49 and 10:49 a.m. Later that day the briefcase was located in a dumpster. Officers retrieved the briefcase and noticed the victim's car nearby in the parking lot across from the apartment of [petitioner's] sister. When the apartment was searched pursuant to a warrant, [petitioner] was found hiding in a closet.

*Brown*, No. 2010-KH-0275, p. 3.

Following its recitation of the evidence against petitioner, the court reasoned:

>The affidavits submitted by [petitioner] in support of his *Brady* claim are comprised solely of hearsay. Neither affidavit provides any first hand knowledge of the crime by the affiant. Robertson's affidavit failed to name the detective to whom he alleges information was given. Amin's affidavit states that he was recently asked to recall the information related to this murder and does not state that the police or anyone connected with the prosecution was aware of this information. Additionally, the information in the affidavits does not link the car and other items allegedly in [the] possession of Griffin to the victim. Further, given the testimony presented at trial, that on the morning of the murder [petitioner] was alone in the apartment with the victim and [petitioner] was seen loading items from the apartment into the victim's car, [petitioner] fails to carry his burden that the disclosure or admission of this alleged information would have undermined the confidence of the verdict in this case.

*Brown*, No. 2010-KH-0275, pp. 3-4.

This court finds that the above reasoning of the Louisiana Fifth Circuit Court of Appeal does not represent an unreasonable application of Supreme Court law, specifically, *Brady v. Maryland*, along with its progeny, to the facts of this case. Accordingly, petitioner's claims that 1) he was denied his right to impeach the State's witness at trial due to the State's

15

concealment of witness Brandon Robertson and Amin Amin; 2) the State unlawfully withheld information provided to an investigating detective regarding the identity of "the real killer"; and, 3) it was fundamentally unfair that he was unable to present at trial the testimony of Brandon Robertson and Amin Amin "due to the [S]tate withholding this material information", are without merit.

### Claim 4) Entitlement to an Evidentiary Hearing

Petitioner argues that an evidentiary hearing is needed in this case so that his witnesses, Brandon Robertson and Amin Amin, "can be brought forth under oath and examined on the witness stand." (Rec. doc. 1, p. 28).

Whether to hold an evidentiary hearing is a statutorily mandated determination under 28 U.S.C. § 2254(e)(2), which narrowly prescribes a federal habeas court's authority to conduct such a hearing. Specifically, § 2254(e)(2) provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that -
> (A) the claim relies on -
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

In the instant matter, petitioner clearly is not relying on "a new rule of constitutional law". Further, as set forth above, based upon the affidavits provided by Brandon Robertson and Amin Amin, their testimony would have been insufficient to overcome the significant evidence supporting petitioner's convictions. Petitioner has failed to meet his burden of showing that the facts, i.e., the testimony of Robertson and Amin, would be sufficient to establish by clear and convincing evidence that if they had testified no reasonable factfinder would have been able to find petitioner guilty of second degree murder and armed robbery. Accordingly;

## RECOMMENDATION

It is hereby **RECOMMENDED** that the instant application for federal habeas corpus relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. §636(b)(1); *Douglass v. United*

*Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996)(*en banc*).[16]

New Orleans, Louisiana, this __29th__ day of _____August_____, 2011.

```
                                        _____
                                            LOUIS MOORE, JR.
                                            United States Magistrate Judge
```

---

[16]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.